IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE,
AT KNOXVILLE

| | | |
|---|---|---|
| EMILIE "EMMA" BERGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. |
| | ) | **JURY DEMANDED** |
| MONROE COUNTY, TENNESSEE, | ) | |
| TOMMY JONES II, and | ) | |
| CONWAY MASON, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Comes the Plaintiff, EMILIE "EMMA" BERGER, and sues the Defendants, MONROE

COUNTY, TENNESSEE, TOMMY JONES II, and CONWAY MASON, would show the Court as

follows:

### I.     INTRODUCTION

1.     This is a civil rights action brought pursuant to 42 U.S.C. §1983 seeking declaratory

and equitable relief, compensatory and punitive damages and other relief against Defendants for

committing acts under color of law and depriving Plaintiff of her rights secured by the First and

Fourth Amendments to the United States Constitution.

2.     EMMA BERGER, a local journalist, political commentator and member of the

press, is openly critical of Defendant Jones, the current sheriff of Monroe County, Tennessee, and

his administration. At all times relevant, Plaintiff has openly supported Defendant Jones' opponent

Jim Kile in the upcoming Monroe County sheriff's primary election. Because of her press reporting,

political speech, editorials, association with Uncensored Voices, and her support for Jim Kile,

Defendants MONROE COUNTY, TENNESSEE, JONES, and MASON retaliated against Plaintiff

1

for her reporting and open advocacy criticizing Defendant JONES and his administration. As such, the individual Defendants abused their position of authority and the power of their office. In an effort to silence and discredit Plaintiff, Defendants waged a campaign against her which included, threats, intimidation, improperly obtaining search and arrest warrants, search of her home, search and seizure of her electronics and person. These actions were taken to silence and retaliate against Plaintiff for exercising her First Amendment rights.

## II.     PARTIES

3.     Plaintiff, EMMA BERGER, at all times relevant was a citizen and resident of Monroe County, Tennessee. At all times relevant, Plaintiff was an administrator of a Facebook Group named, Uncensored Voices of Monroe County Revamped (hereinafter "Uncensored Voices"). Uncensored Voices is an open, public Facebook Group that discusses Monroe County related political and community issues, including local corruption and abuses of power.

4.     Defendant, MONROE COUNTY, TENNESSEE, is a political subdivision of the State of Tennessee pursuant to T.C.A. § 5-1-101. Defendant, MONROE COUNTY, TENNESSEE, is a local governmental entity subject to suit pursuant to 42 U.S.C. §1983 and may be served with process through its Mayor Mitch Ingram, 105 College Street, Suite 1, Madisonville, Tennessee 37354. A department within Monroe County, Tennessee government is the Monroe County Sherriff's Office.

5.     Defendant JONES, at all times relevant, was a citizen and resident of Monroe County, Tennessee and was and is the duly elected Sheriff of Monroe County, Tennessee. As the duly elected Sheriff of Monroe County, Tennessee, Defendant JONES is and was the final decision maker in the establishment, formation and implementation of the policies and customs for the Monroe County Sheriff's Office (the "MCSO").

2

6. Defendant, CONWAY MASON, at all times relevant, was a citizen and resident of Monroe County, Tennessee and is and was the Chief of Detectives for MCSO. Defendant Mason improperly searched Plaintiff's cellular telephone and other electronic devices. This Defendant is sued in his individual capacity only.

7. At all times relevant, the individual Defendants were acting under color of law and the customs and usages of the State of Tennessee.

III. **JURISDICTION**

8. This Court has jurisdiction pursuant 28 U.S.C. §§ 1331 & 1343 and 42 U.S.C. § 1983.

IV. **FACTS**

**A.** *Defendant Jones, Monroe County Sheriff's Office and Continuous Scandals*

9. Defendant JONES' tenure as sheriff began in 2014 because the elected sheriff, Randy White, was declared ineligible to serve as the Monroe County Sheriff and Defendant Jones was appointed by the Monroe County Board of County Commissioners to become Sheriff of Monroe County.

10. Defendant JONES' tenure as sheriff has involved significant episodes of political intrigue and scandal.

11. Soon after his appointment, Defendants JONES and MONROE COUNTY were sued for retaliation by individuals who actively and publicly supported former Sheriff Bill Bivens during his reelection campaign. The above referred to individuals cooperated in investigations by the Tennessee Bureau of Investigation and the District Attorney's Office for the 10th Judicial District concerning allegations of vote buying during the Monroe County election. *See Eddie Manning, Steve Miller and Doug Brannon v. Randy White, individually, Tommy Jones, II,*

3

*individually and in his official capacity as Monroe County Sheriff, and Monroe County, Tennessee*, U.S. Dist. Ct., E.D. Tenn., Knoxville, Docket No. 3:15-cv-34, filed 1/22/2015.

12.     As a result, Betty Jane Best a/k/a Betty Hawkins and Brian Keith Hodge a/k/a Wormy were charged and ultimately convicted of Conspiracy to Buy Votes in violation of 18 U.S.C. § 371 and 52 U.S.C. § 10307(c). *See U.S.A. v. Best et al.*, U.S. Dist. Ct., E.D. Tenn., Knoxville, Docket no. 3:17-cr-8. At the time, Brian Hodge was a deputy for MCSO working for Defendant JONES.

13.     According to Federal Court testimony, Hodge attempted to manipulate and/or coerce Betty Hawkins into not cooperating with the vote buying investigation while in a MCSO patrol car and in his MCSO uniform. Unbeknownst to Hodge, Betty Hawkins recorded that conversation. Defendant JONES testified on behalf of Hodge before the Federal Magistrate Judge seeking to allow Hodge to continue his employment with MCSO.

14.     Similarly, in 2015 another public scandal involving the MCSO was discovered wherein a large number of firearms were improperly sold to a private business which employed several MCSO reserve deputies.

15.     Another public scandal involving the MCSO and Defendant JONES was the employment of his alleged girlfriend, Talena Shaw Holcomb, in 2015 and her promotion to Jail Lieutenant in 2020. Other public scandals including Holcomb and members of her family involved purchases of personal items with attempts to seek reimbursement with public MCSO funds; special treatment for Holcomb and other family members by Defendant JONES; and allegations that MCSO deputies failed to make Monroe County Grand Jury appearances to avoid indictments of supporters of Defendant JONES.

4

16.     Another public scandal involved the MCSO garage and its current employee, Jamey Frank. Frank who, at the time was a trustee, was improperly selling motorcycles and other items valued at more than $ 10,000. ***See* Ex. 1**. His indictment was subsequently dismissed by a temporarily appointed District Attorney, but soon after, Defendant JONES hired Jamey Frank and gave him a county vehicle to drive.

17.     The Tennessee Comptroller Office is currently investigating MCSO and that investigation is still ongoing.[1] ***See* Ex. 2**.

18.     Upon information and belief, Holcomb and other MCSO employees, have resigned due to the Comptroller investigation and/or an investigation by the District Attorney's Office for the 10th Judicial District into their possible criminal conduct.

19.     Similarly, on February 6, 2025, Elijah Lester Isbill, an elderly gentleman who was having a serious medical and mental health episode, was held in the Monroe County Jail on a Class C-Misdemeanor warrant. Soon after his incarceration, Mr. Isbill was strapped to a restraint chair for over 9 hours without being allowed food, water, medication or use of the bathroom. Mr. Isbill died while strapped to the chair and his death was ruled a homicide.

20.     On September 3, 2025, five (5) MCSO corrections officers were indicted by the Monroe County Grand Jury for their involvement in Mr. Isbill's death. ***See* Ex. 3.**

21.     Although not indicted, Defendant JONES and Holcomb, among others, are presented to the Monroe County Grand Jury for its consideration of their involvement in Elijah Isbill's death. ***See* Ex. 4**.

---

[1] Tenn. Comptroller, Annual Financial Report Summary, Monroe County, Tennessee, https://comptroller.tn.gov/content/dam/cot/la/advanced-search/2025/county/FY25MonroeHotSheet.pdf (last viewed March 19, 2026)

22. Other recent MCSO scandals have involved the introduction of contraband and drugs into the Monroe County Jail and its distribution to inmates.

23. In July 2019, Lucas Joe Lance, a corrections officer with MCSO, was helping inmates smuggle contraband into the jail. Along with Lance, inmates Brandon Rymer, Jamey Frank, Travis Hull and Carrie Hull were involved and charged with Conspiracy to Introduce Contraband into a Penal Facility. Lance subsequently entered a two (2) year diversion on the charges. Upon information and belief, Lance was being paid for assisting the inmates to smuggle the drugs into the Monroe County Jail.

24. On February 28, 2022, inmate William Johnson was charged with Unlawful Drug Paraphernalia and Introduction of Contraband in Penal Institution by Holcomb, Defendant JONES' alleged girlfriend. *See* **Ex. 5**. Holcomb, Defendant JONES and another deputy personally searched Johnson's cell. On April 11, 2025, Johnson filed a Notice of Entrapment defense alleging that he was receiving the contraband and drugs to distribute to inmates from a MCSO corrections officer and named witnesses to establish his defense of entrapment: Defendant JONES, Jail Lt. Holcomb, MCSO Corrections Officer David Messer and former MCSO Corrections Officer Caleb Kirkland. After a hearing wherein Defendant JONES, Holcomb and Jail Administrator Albert Medina testified, the State's case against Johnson was dismissed.

25. On December 4, 2024, Caleb Kirkland, a corrections officer with MCSO, was indicted for Official Misconduct and subsequently Money Laundering. *See* **Ex. 6**. Kirkland's allegations involve smuggling and/or assisting inmates smuggle and distribute contraband in the MCSO Jail. This case is still ongoing.

26. On May 7, 2025, Cody Harrill, a corrections officer with MCSO, and relative of Defendant JONES' alleged girlfriend, Talena Shaw Holcomb, was charged with Official

Misconduct and Introduction of Contraband into a Penal Facility. ***See* Ex.** 7. While employed at the MCSO, Cody Harrill had several disciplinary write-ups in her personnel file. In response to one write-up, Harrill stated "none of the higher ups care how this jail is run so why should I? Nobody gets in trouble for serious stuff. It gets overlooked." ***See* Ex. 8**. As a Sergeant, Harrill's superiors were Jail Lieutenant Talena Shaw Holcomb, Jail Captain Chris Williams, Jail Administrator Albert Medina, Chief Deputy Chris White, and Defendant JONES.

27.     On June 23, 2025, Joshua Steven Duncan, a corrections officer with MCSO, was charged with Conspiracy to Introduce Contraband into a Penal Facility along with three inmates. ***See* Ex. 9**. Suboxone was being smuggled into the jail in a Bible.

28.     On October 31, 2025, Michael Phillip Zackey, a corrections officer with MCSO, was charged with Introduction of Contraband into the Monroe County Jail. ***See* Ex. 10**. Zackey was the third Monroe County corrections officer in 2025 to be charged with introduction of contraband into a penal facility. According to the warrant, Zackey received suboxone from an outside source to distribute inside the Monroe County Jail and was paid $300 each time the suboxone was introduced into the Monroe County Jail.

29.     On March 10, 2026, Mitchell Craig Cook and Sierra Nicole Boggess were charged with Conspiracy to Introduce Contraband in Penal Facility, among other charges. ***See* Collective Ex. 11**. According to the warrants, Mitchell Cook and Sierra Boggess made two (2) drops at the Sequoyah High School and inmates, who were taking classes there, retrieved the contraband. Mitchell Cook is a convicted child sex offender and was required to register with the Tennessee Sex Offender Registry. With the exception of his social security number, all of his personal identifying information was public record and listed on the Tennessee Sex Offender Registry. ***See* Ex. 12**. Upon information and belief, the inmates who were retrieving the drugs were transported

7

to Sequoyah High School in a MCSO van driven by an MCSO employee. On March 10, 2026, a Sequoyah High School student found the illicit narcotics and contraband and informed a teacher. *See* **Ex. 13**. On March 10, 2026, the General Sessions Court warrants were filed with the Monroe County Circuit Court Clerk and thus were public records.

30. Instead of informing the community of this issue of public concern and safety, Defendant JONES announced certain personnel changes. *See* **Ex. 14**.

31. In September 2025, Jim Kyle announced his candidacy for Monroe County Sheriff. In his announcement Jim Kyle stated: "I am running for sheriff because Monroe County deserves leadership that is transparent, fair, and committed to the highest standards of professionalism. Recent incidents at our jail have highlighted serious issues of neglect and a lack of accountability— issues that can no longer be ignored. As your sheriff, I will bring leadership with integrity and accountability to every aspect of the department." According to Kile's candidacy announcement, his "priorities are accountability to the public, dedication to fair and unbiased policing, and professionalism and ethical behavior from all employees." *See* **Ex. 15**.

32. Since Kile's announcement, Plaintiff has openly supported Kile and informed Defendant JONES of her support for his opponent. *See*. **Ex. 16**.

### B. *Plaintiff's Reporting, Public Advocacy and Political Speech.*

33. In June 2025, Plaintiff reinstituted a previous Facebook Group and renamed it Uncensored Voices of Monroe County Revamped (hereinafter "Uncensored Voices"). Uncensored Voices is a public Facebook group, and anyone is welcome to join the group and post to the group, either for attribution or anonymously.

34. Uncensored Voices states it is "a place to share Monroe County related information, including controversial topics (like exposing local corruption and abuse of power) that are banned

in other county related groups." At the time of the filing of this Complaint the group contains over 8,000 members with new members being added daily.

35. Since June 2025, Plaintiff published numerous stories on Uncensored Voices that were critical of Defendant JONES and his Administration.

36. Plaintiff reports facts and stories related to Monroe County and engages in political commentary including commentary concerning Defendant JONES, his Administration and other political issues and matters of public concern.

37. On June 3, 2025, Plaintiff published an editorial about the lack of transparency from Defendant JONES and MSCO and her opinions about the complacency of the community and its leaders, as well as the nepotism and "good ole boy" system that is in operation in the County. ***See.*** **Ex. 17**.[2]

38. On June 6, 2025, in her first post on Uncensored Voices, Plaintiff encouraged Monroe County citizens to speak up, even anonymously, "about their own experience of abuse of power from MCSD." She wrote: "We can't claim to be freedom loving patriots in a world where our fellow citizens are afraid of retaliation for speaking out against abuse of power!" ***See*** **Ex. 18**.[3]

39. On June 25, 2025, Plaintiff published an editorial, writing: "Have you (or anyone you know) been a victim of excessive force, assault, sexual harassment and/or intimidation or feel as if any of your civil rights have been violated by any employees of the Monroe County Sheriff's Dept, either as a [] citizen or current/former employee?" A poll with a list of names followed, including: Defendants JONES and MASON and MCSO Detective Billy Littleton, among others. ***See*** **Ex. 19**.[4]

---

[2] https://www.facebook.com/share/p/1LwBJkpF6x/
[3] https://www.facebook.com/share/p/1AjsNWf1QP/
[4] https://www.facebook.com/share/p/17Pd9W4Zdk/

40.     On June 27, 2025, Plaintiff published an editorial about the criticism Uncensored Voices and those associated with the group were receiving. Plaintiff wrote "This group is under fire by . . . a majority of public officials and public employees. . . ." Plaintiff went on to thank the contributors who shared stories and concerns they have about the governmental abuses of power. Plaintiff wrote, she was encouraged by the "overwhelming (and continuous) united response from our community in the quest for truth, transparency and justice." Plaintiff wrote that she received "multiple videos of [Monroe County] jail camera footage that is unreleased." Plaintiff encouraged the community to "KEEP COMING FORWARD!! This is bigger than any one person, it takes all of us!!" Plaintiff also admonished the group and any contributors that she does "not support being dishonest or spreading false narratives for the purpose of bringing harm, slander, harassment, etc., to any person, including public officials and public employees." *See* **Ex. 20**.[5]

41.     On July 5, 2025, Plaintiff published an editorial about citizens who were criticizing her and Uncensored Voices. Plaintiff reported that earlier, MCSO Detective Littleton called her threatening and stating that Uncensored Voices group was "out-of-control." Plaintiff opined that Uncensored Voices is the first platform that has given citizens the freedom to speak out about government abuses and retaliation. Plaintiff's editorial stated that Defendant JONES and other Defendants were "definitely under investigation by the citizens. You don't have to carry a badge to have detective skills. In fact, some of the folks I've met in the last few weeks are better detectives than many of the ones employed by the county." Plaintiff also wrote regarding Defendant JONES: "There are plenty of people in this group who are smarter than the average bear with a badge, and understand that you never reveal your entire hand. (Especially during an active investigation, right, [Defendant JONES]?" Plaintiff continued, "Once you sign up to receive a paycheck from Monroe

---

[5] https://www.facebook.com/share/p/1GRytBtdZa/

County Sheriff's Dept, anything you do is subject to scrutiny of the public! . . . Don't like it? Find another job. . . . To the many people coming forward with information and their stories, stay strong. Don't be intimidated. The fact they're all saying how out of 'control' this group is tells you everything you need to know." Plaintiff ended by writing, Defendant JONES "owes us answers and make no mistake, we're going to get them." *See* **Ex. 21**.[6]

42.     Later the same day on July 5, 2025, Plaintiff again published an editorial expressing her concern about Defendant JONES and his alleged girlfriend Holcomb writing: "I'm a concerned citizen just like so many others, who wants to know what in hell is going on behind those walls with our elected officials and employees. That's who I am. No one is giving us any answers, so I guess we have to use our own research abilities on some things, speculation on others." Commentating on the role and duties of a jail lieutenant, Plaintiff included a picture of Defendant JONES and Holcomb in apparent "horseplay" inside the jail and opined about Cody Harrill's write-ups, one of which concerned Harrill's horseplay with another corrections officer in the jail. Plaintiff questioned: "Is it just me or shouldn't the sheriff be holding himself to a higher standard, to prevent such assumptions of improprieties, not only as a married, supposedly Christian man, but also as an elected official?" "I'm not revealing my sources as usual, but if the information is correct, and JONES was in fact subpoenaed to Talena's divorce court that confirms a lot, IMO . . . . If you don't know why it matters, you're even further behind. The character and behavior of an elected official, especially that of a sheriff, matters. How well can a sheriff be doing his job if he's a simp for lower ranking jail staff?" *See* **Ex. 22**.[7]

43.     On July 10, 2025, Plaintiff published an editorial questioning Defendant JONES' competency and his repeated failures to address issues that occur within his Administration.

---

[6] https://www.facebook.com/share/p/1GSbtv1Dku/
[7] https://www.facebook.com/share/p/1DVkNhwSRf/

Plaintiff expressed her opinion of Defendant JONES' management abilities: "Poor guy. Must be terrible to be the town sheriff and not know about things until they drop on a public social media forum." Plaintiff continued by commenting on Defendant JONES failure to inform the public and take action against an MCSO employee.

> "He's a good guy, after all, and tries so hard to maintain that $110k salary . . .oops I mean transparency."

> "He's just a victim in all of this terrible 'defamation' from this mean, hateful 'out of control' group full of liars. So much so that he has to reach out to attorneys to ease his triggered emotions. All he wants is for it to go away. To wake up and it just be a bad dream"

> ". . . Ya know, like the bad guy in Scooby-Doo when they pulled the mask off-'I would have gotten away with it, if it hadn't been for you pesky kids!'"

> "So if everyone could just stop being mean and hurting the sheriff's feelings, that would be great. Otherwise, he's gonna sue the britches off the whole lot of us! In his defense, he tried to tell you to shut the hell up nicely, when he disabled his FB comments. Y'all just can't listen. Sheesh."

> Disclaimer for those who can't read sarcasm . . . .

> You know my opinion, [Defendant Jones is] a big fat yellow-bellied coward who hides behind anyone he can to look like a choir boy. No one cares about your feelings, Tommy. We care about your actions. For the 99th time, have some dignity and resign.

*See* **Ex. 23**.[8]

44.     July 19, 2025, Plaintiff published an editorial about Debbie Martin and her son who "stays out of jail because of her pull with the sheriff." Defendant JONES hired Martin, who is a supporter of Defendant JONES, and is married to a Monroe County Election Commissioner, Dwayne Martin. Plaintiff nicknamed Debbie Martin the "Hallmark Lady" after Martin began making derogatory remarks about Plaintiff. In her editorial, Plaintiff stated that her "interest peaks when said Joe ties in to a public employee and is rumored to 'never get jail time.'" Plaintiff

---

[8] https://www.facebook.com/share/p/1B2yRZMahh/

questioned how Martin's son was released on a revoked bond and asked the rhetorical question: "Where does the rest of the class sign up for the Golden Fast Pass ticket?" *See* **Ex. 24**.[9]

45.     On July 31, 2025, Plaintiff published an editorial and reported about Defendant JONES' failure to arrest a family member of his alleged girlfriend who had outstanding active warrants. *See* **Ex. 25**.[10]

46.     On August 2, 2025, Plaintiff reported in a 3-part story about Shaw and Defendant JONES' testimony regarding inmate William Johnson's Entrapment hearing involving the testimony of Defendant JONES, Shaw and others and reminding readers that at the conclusion of the testimony the State's case against Johnson was dismissed.

47.     Aug. 30, 2025, Plaintiff published an editorial and parody about MCSO violating citizens' civil rights and compared a normal citizens' rights to those who violate the law working for Defendant JONES. Plaintiff pointed out that MCSO deputy, Josh Woods, was involved in a drunken barroom scuffle but was never arrested. She warned citizens that their rights may be violated by MCSO without breaking the law. And your trip to the jail "may be like checking in to the Hotel California." *See* **Ex. 26**.[11]

48.     On September 4, 2025, Plaintiff published an editorial entitled, "Same Stink, Different Day (& Author) The Trifecta," nicknamed Defendant JONES "Tomcat" and his new PR agent Sue Pettingill, "PR Sue." Plaintiff wrote "[t]he only thing that I can think of that is more destructive to this county than the ego of Sheriff Tommy JONES, is combining that ego with someone who knows their way around grammar and being a fixer of sorts, all wrapped under the

---

[9] https://www.facebook.com/share/p/1Cd6jJ6fJP/
[10] https://www.facebook.com/share/p/1AWUhUricH/
[11] https://www.facebook.com/share/p/1LFLehsyBf/

comfy legal protection of County Attorney, Reed Dixon." Plaintiff warned the citizens and the

group that you have to know what tactics to be on the lookout for:

> "Public relations agents who operate unethically, have an endless bag of tricks to use, in hopes of repairing an official's reputation. Most are good at what they do. They'll have you rethinking your stance in no time with their spins."

> One of the most notorious spins-redirecting blame. Of course, we're used to victim blaming from [Defendant] Jones, it's just a little more covert now. The detailed account of the conversation with Dr. Suzuki shows that. Why did he feel the need to call and interrogate the medical examiner? Were these same questions launched after the determination of 'natural causes' in the first report? (HINT: No)."
> . . .

Plaintiff continued

> I understand you're used to coming out smelling like a birthday rose you just bought for Talena, but that was the old Monroe County. This is the beginning of a new one, Tommy. Spoiler Alert: There's a big demotion in the works for you.
> . . .
> . . . "We get it! Your staff didn't do anything wrong in your eyes and you'd still be getting away with it at the end of the day if it weren't for us pesky kids!"

> "P.S. Dear Mr. Dixon, are you OK? I'm no attorney or anything (unless you count my (Google degree), but I'm pretty sure the majority opinion is Tommy Jones is not what best suits the county. Talking your stray cat pal down from that ego trip into resignation would be the smart move. That's just common sense and deductive reasoning, no degree needed. But who am I? Wait 'til election time, that's fine. We all like a good show!"

*See* **Ex. 27**.[12]

49. On September 5, 2025, in an editorial, Plaintiff criticized Defendant JONES about

his lack of transparency and new policy restricting MCSO corrections officers use of their cellular

phones. Plaintiff wrote, "do you think [] that will prevent the truth from coming out? Transparent

sheriffs aren't afraid of employees using their phones. What do you have to hide? It's bigger than

a "leak", I hate to tell you." "Reed, where are you?? Are you OK?? If so, please help them. If at

---

[12] https://www.facebook.com/share/p/18USJDgvCu/

Case 3:26-cv-00133-KAC-JEM    Document 1    Filed 03/22/26    Page 14 of 34    PageID #: 14

least one of the Paw Patrol trio could clarify for us, that'd be great. Perhaps the same way you detailed the phone conversation with Dr. Suzuki." ***See* Ex. 28**.[13]

50.     On September 12, 2025, Plaintiff reported and released an audio recording of Defendant JONES talking negatively about Tenth Judicial District Attorney, Stephen Hatchett. Defendant JONES said: "Hatchett's with his second wife, hell he's been around the block his self. But they wanna act holy and righteous, they do nothing wrong. And I know what he's doing criminally wrong. I don't care what he does at home, how many times he's been married, that has nothing to do with it . . ." Commenting on Defendant JONES' recorded statement, Plaintiff wrote:

> "A sheriff who is running around gossiping, making serious accusations of criminal wrongdoing against the DA, makes for a very toxic work environment. These two elected positions are required to work together. When the sheriff is gossiping and spreading harmful narratives to his staff and others, especially about the district attorney, this erodes trust."
>
> . . .
>
> "Now if this is truly the case, Mr. Jones, that you know of things that Mr. Hatchett is doing to break the law, have you reported it?
> . . .
>
> "You have allowed many [former employees] walk away under the cloak of resignation (including CO's who were having sexual relationships with young teenagers, so I was recently informed)
> . . .
> I catch a little criticism for the humor added to many of the Jones Scandal posts, especially the reels. The truth of the matter is I'm just a citizen. I'm not working for anyone's campaign.
>
> Jones however, is operating for votes. Judging from his actions, he's building his campaign on trying to tear down the DA's reputation with baseless accusations.
>
> Talk about deflecting and projecting. Sheesh! Now that's a dirty campaign.

***See* Ex. 29.**[14]

---

[13] https://www.facebook.com/share/p/1AEA6GPxfx/
[14] https://www.facebook.com/share/p/1BWAcet51K/

51. On October 7, 2025, Plaintiff published an editorial entitled, "Tomcat's Broken Record of Blameshifting." Plaintiff wrote, "another example in the ever-growing list of JONES' refusal to accept any accountability for his actions. It appears no one is safe from his baseless accusation of blameshifting, not even our District Attorney, Stephen Hatchett." Plaintiff ended her editorial, "P.S. We're still waiting to hear about these alleged crimes, 'sheriff' . . ." ***See* Ex. 30**.[15]

52. On October 8, 2025, Plaintiff published an editorial entitled, "More Witchcraft AKA First Amendment," comments about Defendant JONES and his supporters, the "Redcoats," who are "launching more personal attacks and gossip against citizens who oppose him, than ever before." The editorial stated: "The public has a right to know how tax dollars are being used by our High Sheriff. Considering there have been numerous incidents over the past several months, makes 'speculation' and asking questions even more important." Plaintiff wrote:

> "I'm thankful we live in a society where elected officials are subject to the rule of law, even when they try to silence dissent."
>
> Speaking of being silenced, the fact that I can't be retaliated against thoroughly enough to shut me up, is what seems to piss the JONES Fanclub off the most.
>
> I'm also, unbothered by all of the outlandish attacks, [from Debbie Martin about] witchcraft to whore, an alcoholic, one of the biggest drug dealers in the county, a criminal, a felon who can't vote, etc.
> . . .
>
> Our High Sheriff is feeling the sting of no longer running unopposed. Those who personally benefit the most from him being in office have the most to lose and their "I know you are but what am I' tantrums are the loudest. It's all a distraction.
>
> There's a new face running for sheriff and people are pissed. Citizens are holding Tomcat's feet to the fire for his bad deeds and people are pissed. More people are using their dissenting voices than ever before and people are pissed.

---

[15] https://www.facebook.com/share/p/1Db2ewXkFp/



***See* Ex. 31**.[16]

53.     On January 17, 2026, Plaintiff opined she "believe[s] that [Defendant JONES] is

corrupt and dishonest based on a plethora of evidence, all making him unfit to serve as sheriff in

Monroe County." Plaintiff also stated her support for Defendant JONES' opponent:

> "Much like a toxic relationship, this administration has run its course. Me personally, I'll be supporting Jim K[ile] for sheriff."
> . . .
> Thankfully, someone was brave enough to step up to the plate for a go at it. We know how the good ol boy system works when people dare go against the powers that be, intimidation and retaliation to say the least.
> . . .
> Every vote matters. With all the vote buying schemes in the past (one who was convicted of it and is a big vocal Tomcat supporter in this group even), be on the lookout for similar incidents.
> . . .
> I've been MIA, but I've been keeping up because apparently the issues kept piling up . . with a new in-custody death (alleged suicide) . . . .
>
> Meanwhile, the Mattress Police at MCSO are worried about women's handbags. Very predictable, retaliatory move, per the good ol boy system usual.

---

[16] https://www.facebook.com/share/p/1Lj2YKerYV/

"The darkest places in hell are reserved for those who maintain their neutrality in times of moral crisis." – Donte Alighieri

"Our lives begin to end the day we become silent about things that matter. We must take a stand. Neutrality only helps the oppressor. – Elie Wiesel

*See* **Ex. 32**.[17]

54.     January 25, 2026, Plaintiff published a video parody[18] of Defendant JONES wherein JONES says his campaign tactic is to "ignore the haters that talk about dumb stuff like my affair with subordinates, buying fake purses, contradicting myself, dodging accountability, doing illegal favors, looking the other way when staff breaks the law, trash talkin' the DA, lawsuits or oopsies like when people die in our custody every once in a while. Ya know, petty stuff. . . When folks say unkind things about me, just shut them down by bringing up what THAY [sic] have done. Ain't nobody perfect, ya know. It don't matter about nothing I done, or whether it's true or not. Cause remember, we're just gonna distract. . . to good stuff. When haters hate, just say: So what about so and so? Fill in the blank with someone else's name."

55.     January 26, 2026, Plaintiff published another parody[19] about Defendant JONES and his detectives, which included Defendant MASON and Detective Littleton and Filyaw, when they seized several handbags. Plaintiff sarcastically criticized Defendant JONES and his Administration for their failure to investigate important matters or deal with the serious issues occurring in Defendant JONES' Administration.

---

[17] https://www.facebook.com/share/p/18Q9z5FJdz/
[18] https://www.facebook.com/share/p/1CrDH5Ux28/
[19] https://www.facebook.com/share/p/1KMnmoZWh7/

56.    January 30, 2026, Plaintiff published a parody of Defendant JONES making a campaign ad.[20] Defendant JONES is referred to as "Tomcat," and he is wearing a transparent uniform.



The parody concludes with several editorial commentary slides writing:

> "Unfortunately, harm has befallen several humans during their stay at the Monroe county jail";

> "In some cases, even death. Like Lester Isbill & Joshua McCleary"

> "Shouldn't we find it more offensive that terrible things have happened on the watch of our elected sheriff?"

> "while he continuously dodges any personal accountability"

> "and disabled comments last summer on the MCSO Facebook page to silence dissenting voices and public outcry"

---

[20] https://www.facebook.com/share/p/1BT6C9mUXQ/

"meanwhile, elaborate and lengthy posts are made regularly about petty issues"

"things like proudly detailed accounts of arresting a pregnant woman who tragically lost her family"

"for selling knock off handbags"

"Too much has Happened You gotta Scat, Tomcat!"

57.     On February 1, 2026, a cold day, Plaintiff published a parody about Defendant

JONES and his refusal to allow public comments on his Facebook Group. Plaintiff wrote:

Citizens County wide are retracting their previous statements of only voting for "Tomcat" in the event that Hell should freeze over. They're now opting for similar hyperbole of other events highly unlikely to ever happen, like "flying pigs" and "the day Tomcat accepts Accountability."



*See* **Ex. 33**.[21]

58.     On February 4, 2026, Plaintiff published a one (1) minute video parody.[22] The video

asked "Will a Tomcat Be Your Pick for 2026?" The characters in the video parody are Tomcat,

Mrs. Tomcat and another female cat deputy. The parody stated:

Just because Mrs. Tomcat stands by her man, doesn't mean *you* have to.

You don't have to give him two arms to cling to and something warm to come to, when nights are cold and lonely.

---

[21] https://www.facebook.com/share/p/1FHGRoy2US/
[22] https://www.facebook.com/share/p/1Ax2kNcqoR/

Fortunately, that's not your job.

Speaking of jobs, aren't you tired of having a sheriff who doesn't do *his* job?

One who refuses to take personal accountability for anything.

Silences the public and deflects at every turn.

Hires a PR agent when he's up to his whiskers in scandal and *still* can't answer questions . . . unless of course he tries to lure you into his office for a private meeting to "answer questions" at his desk. I don't know about you, but I don't wanna be anywhere near Tomcat's desk. In fact, I don't even want him at his desk.

It's time for a fresh start. So that means you have to scat, Tomcat! You're not the pick for 26.

59.     On February 9, 2026, Plaintiff published a report relaying to the public an announcement made at the Republican Party meeting that "anyone harvesting absentee ballots WILL be prosecuted. That spells trouble for Tomcat's Litterbox Minions!" ***See*** **Ex. 34**.[23]

60.     On February 12, 2026, Plaintiff published an editorial about sheriff candidate Jim Kile and wrote why she will vote for Jim Kile for sheriff. ***See*** **Ex. 35**.[24]

61.     On February 18, 2026, Plaintiff published a cartoon parody of Defendant MASON and MCSO Detective Billy Littleton. Littleton is nicknamed "Billy Lilly" and MASON is "C Mason."

---

[23] https://www.facebook.com/share/p/1MKTpJct21/
[24] https://www.facebook.com/share/p/1He9w8wGFa/



*See* **Ex. 36**.[25]

---

[25] https://www.facebook.com/share/p/1GFiEGDkG2/

62.     On February 24, 2026, Plaintiff published an editorial titled "The Short Leash of Justice: Integrity Endorses Integrity." The editorial contains a picture of 10th Judicial District Attorney Stephen Hatchett walking Sheriff Tomcat with his transparent uniform on a leash. ***See Ex. 37***.[26]



[26] https://www.facebook.com/share/p/18n9gymQQw/

Case 3:26-cv-00133-KAC-JEM     Document 1     Filed 03/22/26     Page 23 of 34     PageID #: 23

In the editorial, among others, Plaintiff wrote that Defendant JONES is exhibiting "criminal behavior" and stated "anyone who dares to oppose Tom's administration will [] also catch a similar label." "From the smallest of citizens, with a big mouth and a Facebook group, to the prominent leaders, anyone who doesn't turn a blind eye to the administration of Sheriff Tommy JONES, can fall victim to harassment, intimidation, lies, retaliation and a host of other malicious efforts. Seniors handing out cards in public for the opposing candidate, they're not safe from it either." The editorial then rebukes the other elected officials for their failure to publicly speak against Defendant JONES' actions. *See* **Ex. 37.**

63.     On February 27, 2026, Plaintiff published an editorial concerning Defendant JONES instructing his Detectives and officers to attend the criminal hearing in support of the corrections officers who were indicted for the in-custody death Lester Isbill. The editorial stated "If you think our so-called sheriff, Tommy JONES, couldn't be any more shameless, think again. It's almost as if he's competing with himself for World's Most Despicable Human." Plaintiff listed some of the detectives in attendance, including Defendant MASON and MCSO Detective Filyaw. *See* **Ex. 38**.[27]

64.     On March 2, 2026, Plaintiff released a leaked audio recording of Defendant JONES where he started that he is "honest as the day is long" and "there's nothing that I do." *See* **Ex. 39**.[28]

---

[27] https://www.facebook.com/share/p/1Apj8sWDSz/
[28] https://www.facebook.com/share/v/18UJhkL5fq/



65. On March 3, 2026, Plaintiff released another leaked audio recording of Defendant JONES. **See Ex. 40.**[29]

---

[29] https://www.facebook.com/share/v/18NwSuUB2z/

66. On March 4, 2026, Plaintiff published a straw poll allowing people to vote for the two Sheriff candidates. *See* **Ex. 41**.[30]

67. On March 11, 2026, at 10:56 a.m., Plaintiff published an editorial about "Tomcat's shameless campaign tactics" and his failure to publicly report a drug smuggling scheme that involved a local high school, Monroe County inmates and a convicted sex offender. *See* **Ex. 42**.[31] In her editorial, Plaintiff encouraged anyone attending Defendant JONES "scripted meet & greets the crooked little sheriff has, ask him if the inmate who escaped work duty last night at Glassmasters was one of the inmates that, for reasons which are not clear, are allowed to be on Sequoyah High School campus and was using it as a drop zone for drugs." According to the editorial, the drugs were found by a student, and a convicted child sex offender, Mitchell Cook, was dropping the drugs on the school grounds for inmates to collect when they are later brought to the school. Along with her editorial and opinions, Plaintiff attached Cook's Monroe County General Sessions warrant, docket no. S26-0317 and his Tennessee Sex Offender Registry page.

68. On March 11, 2026, sometime between 6:00 p.m. – 7:00 p.m., Defendant MASON contacted Plaintiff by telephone about her editorial and Mitchell Cook's warrant. Plaintiff informed Defendant Mason that her post with any of Cook's personal identifying information was inadvertent and the original had been deleted and a new redacted version published.

69. MCSO Detective Daniel Martin had filed the Cook Arrest Warrant on March 10, 2026, with the Monroe County Circuit Court Clerk. And later that same day, Mitchell Cook was arrested on the Monroe County warrants by Gatlinburg Police Department.

70. At the time Plaintiff published her editorial, Mitchell Cook's Monroe County General Sessions warrants were public record.

---

[30] https://www.facebook.com/share/p/18Z2U8xBBn/
[31] https://www.facebook.com/share/p/1NK5yETLae/

71.     On March 12, 2026, Plaintiff published a report concerning Defendant Mason's phone call the prior day. Plaintiff reminded readers of her report about Cook being "accused of using school property as a drop point for drugs and contraband intended for inmates." The report continued:

> "[y]ou would think that's a story to raise obvious public safety questions—particularly because it involved activity connected to the high school and inmates moving between the jail and campus for early morning classes. . . . The warrant itself was already a public record. When I first posted about it, I didn't realize the SS number was unredacted. As soon as it was brought to my attention, 20 minutes later (around noon), I removed it and replaced with the redacted version. . . . Here's what's troubling. I received a call from Conway Mason at MCSO last night, telling me that he had received a complaint from Mitchell Cook, about his personal information being posted. Despite being caught off guard with the audacious rapid response of a compalint [sic] by someone I assumed would be in custody, I informed him that I had already made the correction hours ago. . . . Instead of MCSO informing the public about a situation involving a repeat offender, a school campus, and drugs and contraband being routed back into the jail, the immediate priority appears to have been a complaint about a very brief posting error."

> Seeing as how Mr. Mason seemed enthusiastic about detective work, I sent him a message a few hours later and asked about the inmate that escaped work duty Tuesday night at Glassmasters and was MIA for several hours. I asked if he was wearing an ankle monitor, curious as what took so long to find him. I'm still waiting on a reply, but I won't hold my breath.

> One would think issues like these are also a matter for the public to be informed about but I suppose that wouldn't be beneficial for an administration focused solely on keeping up appearances.

> Parents, students, and taxpayers deserve to know when incidents like these are happening in their community. Yet there was no public notice from the sheriff's office about it.

> No warning.

> No explanation.

> No transparency.

> Per Sheriff Tommy Jones' usual.

Meanwhile, vague posts about unrelated matters, like rearranging furniture and "Wanted Wednesday" continue.

It seems a question the public should reasonably ask is this:

> Why was a brief posting mistake that was corrected immediately treated as a higher priority than informing the community about an alleged criminal operation connected to school property and the jail?

> Why was it also priority over informing the public about ANOTHER inmate escaping work duty, just the other day.

Public trust isn't built by controlling the narrative or keeping inconvenient stories quiet, regardless of how many times your PR agents tell you otherwise.

It's built through transparency.

And when that transparency doesn't exits, people start asking questions.

Those questions aren't going away, Tomcat.

The editorial concluded with a cartoon parody of Tomcat, C. Mason and Billy Lilly.



*See* **Ex. 43**.[32]

---

[32] https://www.facebook.com/share/p/1C2J6SiD63/

72.     On March 13, 2026 at about 3:17 p.m., Plaintiff published an editorial entitled "Are you Offended? You Should Be." The editorial began: "Because the Jones administration—and their resident narrative manager, PR Sue—apparently think the citizens of Monroe County are idiots." And it criticized MCSO for issuing a public statement denying that a TDOC inmate had "escaped," despite MCSO's own description that the inmate left an assigned worksite unattended, failed to return, and prompted a search. The editorial questioned the legality and supervision of allowing state inmates to work outside the jail without guards and criticized county officials for emphasizing semantics rather than transparency and public safety. The editorial concluded with another cartoon parody of Sheriff Tomcat. *See* **Ex. 44**.[33]



---

[33] https://www.facebook.com/share/p/1CR1sTgvuv/

73.     Approximately 3 hours after Plaintiff published the above editorial, Defendants sought and obtained a search warrant for Plaintiff's cellular telephone, computer and electronics and an arrest warrant. At approximately 7:30 p.m. that same day, Plaintiff was arrested and charged with Identity Theft Trafficking, a Class C Felony, based upon the original story regarding Mitchell Cook.

### C.     *Plaintiff Makes Her Opposition to Jones' Reelection Known*

74.     On July 7, 2025, in response to Plaintiff's editorials, reporting and political speech, Defendant JONES and the Monroe County Attorney requested that the 10th Judicial District Attorney's Office and/or the Tennessee Bureau of Investigation ("TBI") investigate Plaintiff. However, the District Attorney refused. *See* **Ex. 45**.

75.     Plaintiff's editorials and political reporting were an embarrassment to Defendant JONES and an obstacle to his reelection.

76.     On January 24, 2026, Plaintiff sent Defendant JONES a private email that clearly stated her support for Jim Kile. In relevant part, the email stated: Jim Kile "is the only one brave enough to run-despite incidents, such as threats and intimidation, that have happened to other (even prominent people) who dare speak against you or your administration." *See* **Ex. 16**.

77.     In her email, Plaintiff told Defendant JONES that Monroe County "need[s] a fresh start for the most important administration in the county" and "all grievances against [you] and [your] administration can easily be found, in great detail, on the Uncensored Voices Facebook page." The email continued, she "hope[s] . . . there are no instances of retaliation and/or intimidation, as there has been in the past and that threats of lawsuits against me, as well as talk of illegal investigations are behind us."

### D. Defendants Retaliation and Constitutional Violations

78. On March 13, 2026, based solely on Plaintiff's publication of the Cook editorial and reporting, Defendants JONES and MASON met with Judge Sandra Donaghy in order to obtain a search warrant to confiscate Plaintiff's electronics and arrest warrant charging Plaintiff with Identity Theft Trafficking under T.C.A. § 39-14-150(1)(B)(C).[34]

79. Defendants JONES and MASON knowingly and/or recklessly made false and/or misleading statements to Judge Donaghy in order to obtain the arrest and search warrants for Plaintiff.

80. At approximately 6:20 p.m., Judge Donaghy issued both an arrest warrant and search warrant based on the false and misleading statements made by Defendants JONES and/or MASON. *See* **Ex. 46**.

81. Moreover, the Affidavit of Complaint stated that Plaintiff posted the unredacted Cook warrant on March 11, 2016 and "the next day created another post on Facebook" that again contained Cook's social security number. This was false and misleading.

82. Plaintiff did publish an editorial the next day critical of Defendants JONES, MASON and the MCSO. *See* **Ex. 43**.

83. Upon information and belief, one or more members of the public obtained the unredacted Cook warrant from the Monroe County Clerk's office prior to Plaintiff receiving it. No one else has been charged!

84. At approximately 7:30 p.m., on March 13, 2026 Defendant MASON, and MCSO Detectives Billy Littleton, Jason Filyaw, Daniel Martin and Jason Crowder, arrived at Plaintiff's house to execute the search warrant and arrest Plaintiff.

---

[34] Identity Theft Trafficking is a class C-felony, with penalties including from 2-12 years in prison and up to $ 5,000 in fines.

31

85. During the search of Plaintiff's home, Defendant MASON refused to provide Plaintiff a copy of the search warrant, refused to notify her why she was being arrested and refused to allow her to contact her attorney.

86. When the MCSO detectives finished the search of her home, Plaintiff was handcuffed, physically searched by a male MCSO deputy, and transported to the Monroe County Jail.

87. Upon being booked into the Monroe County Jail, Plaintiff was further strip searched.

88. Before being booked and stripped searched, MCSO Detective Billy Littleton and Defendant MASON began a coercive interrogation in an attempt to scare and intimidate Plaintiff.

89. As a result of Defendants' actions, Plaintiff's home was improperly searched; her personal property improperly seized and searched; her private and personal life was improperly invaded; and she was improperly arrested, strip searched, humiliated and made subject to public ridicule.

90. In an attempt to silence Plaintiff and other critics during his attempt to gain reelection, Defendant JONES, as the final decisionmaker for policy for the Monroe County Sheriff's Office, implemented a policy of harassment and intimidation toward Plaintiff and opponents of his Administration and reelection. In furtherance of this policy Defendant JONES and the other Defendant began a campaign of harassment and intimidation toward Plaintiff and when that did not work, implemented a policy to improperly search Plaintiff's home, seize and search her personal property, and improperly seize her person.

91. The improper actions of the Defendants have caused the Plaintiff physical injury, mental and emotional distress, humiliation and embarrassment, damage to her reputation and financial damage.

92.     The actions of the individual Defendants, solely and combined were willful, wanton, malicious, reckless and/or grossly negligent such as to allow an award of punitive damages.

## V.     CAUSES OF ACTION
### A.     First Amendment

93.     The actions of Defendants violated Plaintiff's First Amendment rights to freedom of speech, the press, association and to petition the Government for a redress of grievances.

### B.     Fourth Amendment

94.     The actions of Defendants violated Plaintiff's Fourth Amendment rights to be secure in her person, house, papers and effects; to be protected against unreasonable searches and seizures; and providing that a Warrant shall not issue but upon probable cause.

## VI.     RELIEF REQUESTED

95.     Enter a Declaratory Judgment pursuant to 28 U.S.C. § 2201 declaring that the search, seizure and arrest of Plaintiff, her house and her papers and effects violated her rights as secured by the First and Fourth Amendments to the U.S. Constitution.

96.     Issue a prohibitory injunction restraining, prohibiting and enjoining Defendants from taking retaliatory action against Plaintiff or from further demeaning or disparaging Plaintiff's character in the future.

97.     Award Plaintiff a judgment of compensatory damages in an amount sufficient to compensate her for her injuries and damages.

98.     Award Plaintiff an appropriate amount of punitive damages.

99.     Award Plaintiff her reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

100.     Empanel a jury to try this matter.

101.     Grant Plaintiff such other and further general relief as she may be entitled upon a hearing of this cause.

Respectfully submitted.

WORTHINGTON & WEISS, P.C.

s/ W. Tyler Weiss
W. TYLER WEISS [028801]
409 N. College Street, Suite 1
Madisonville, Tennessee 37354
Office: (423) 442-5353
Email: tweiss@worthingtonweiss.com
*Counsel for Plaintiff*

34